## LEE *v.* STATE OF INDIANA.

### [No. 23,887.   Filed May 13, 1921.]

1. CRIMINAL LAW.—*Appeal.*—*Review.*—*Sufficiency of Evidence.* —*Scope of Review.*—In determining the sufficiency of the evidence to sustain a conviction, the court on appeal will not weigh the evidence and will consider only such evidence as tends to sustain the decision of the trial court.   p. 532.

2. INTOXICATING LIQUORS.—*Unlawful Possession with Intent to Sell.*—In a prosecution for unlawfully keeping intoxicating liquor with intent to sell, barter, etc., in violation of §8356d Burns' Supp. 1918, evidence *held* insufficient to support a conviction.   p. 532.

From Marion Criminal Court (51,034) ; *James A. Collins,* Judge.

Prosecution by the State of Indiana against Harry Lee.   From a judgment of conviction, the defendant appeals.   *Reversed.*

*Holmes & McCallister,* for appellant.

*U. S. Lesh,* Attorney-General, and *Mrs. Edward Franklin White,* for the state.

MYERS, J.—Appellant, with four other persons, was by affidavit jointly charged with unlawfully keeping intoxicating liquors with intent to sell, barter, exchange, give away, furnish, and otherwise dispose of the same to persons within this state to the affiant unknown. Acts 1917 p. 15, §4, §8356a *et seq.* Burns' Supp. 1918. A *nolle prosequi* was entered as to two of the persons so charged, and on a plea of not guilty by the other three, trial was had before the court without the intervention of a jury, which resulted in a finding of guilty and judgment in accordance with finding. Appellant alone appeals, and assigns as error the overruling of his motion for a new trial.

The only question for decision involves the sufficiency of the evidence to sustain the decision of the trial court.

1. We are not permitted to weigh the evidence. It is our province to consider only such evidence, if any, as will sustain the decision of the trial court. The evidence is exceptional in many respects.

2. There is no evidence that appellant ever sold, bartered, exchanged, gave away, furnished or otherwise disposed of any intoxicating liquor of any character or kind, or that he was engaged in a business where liquor of any kind was likely to be sold, nor does it appear that any liquor was ever found in his possession, unless the facts to which we shall hereafter call attention can be thus construed.

Briefly stated, the only evidence tending to support the charge was given by a Mr. Keeler, against whom appellant had filed an affidavit charging him with the larceny of his automobile. Mr. Keeler had a friend who had three cases of whisky for sale, and he undertook to assist him in disposing of it. At that time Keeler and appellant were not acquainted. A third party brought them together in front of appellant's place of business at 508 Indiana avenue, Indianapolis.

Keeler proposed to sell the whisky to appellant, naming a price and saying that it was bonded whisky. Appellant told Keeler he would like to have some of it, but that he was busy and could not go and see it. Late in the afternoon Keeler again called upon appellant and induced him to go to the place where the whisky was kept and, after sampling it, appellant said he would take it the next day. The next morning, which was Sunday, Keeler called at appellant's place of business and there learned that appellant was at home. A young fellow whose name he afterwards learned was Harrison, and who worked for a man by the name of Brown, went with Keeler to appellant's residence. Keeler went in and found that appellant was in bed. Appellant said, "I will send my car and this fellow, my partner, to get money and go out and get the liquor." The witness said, "I will drive your car." He said, "No, I will get a driver for my car. We went back on Indiana avenue and the first thing I knew this gentleman, Reed, came up driving Lee's car. Reed and three other fellows were in the car. I got in. We drove out east. On the way out, Harrison exhibited a roll of money." The witness did not know the amount. The car was driven by a young man by the name of Reed. He had no money. It further appears without contradiction that Reed was engaged in repairing and driving automobiles; that he kept appellant's car in repair and had recently worked on it and left it in front of appellant's place of business. Harrison and Reed were well acquainted with each other, and on the Sunday morning in question Harrison asked Reed to drive him out east as he wanted to see a couple of fellows. Reed consented and Harrison and two other fellows besides himself stepped into appellant's car and drove out to the east end of the city. There is no evidence tending to show that appellant knew anything about his car being so used or that it

was used at all until in the evening when he went after it and found Reed who told him that Harrison had the car in a whisky transaction; that the police got after him and that he abandoned it. Appellant then went to the police station, but could get no information with reference to his car. He again saw Reed, who told him to see the fellow that talked to him on the avenue. The next morning he looked up Keeler's residence and went to see him and asked him about the car. Keeler ordered him away from his premises and threatened to shoot him. He then made an affidavit against Keeler and reported the matter to the police of Indianapolis, and eight days thereafter the police found the car which in the meantime had been repainted.

The uncontradicted evidence further shows that Keeler and the other four men who were in the car with Reed as driver, drove to Emerson avenue and there met the supposed owner of the whisky. They then drove to East 10th street where a sack supposed to contain the bottles of liquor were transferred from the owner's car to the car then occupied by the four men. Keeler then requested them to pay for the whisky which they refused, and drove off. Keeler then got into the other car and followed the car containing the whisky. During their pursuit they picked up a city fireman who stood on the running-board of their car. The men in appellant's car mistook the fireman for a policeman, stopped their car and abandoned it. Keeler took charge of the car and whisky, and later took the whisky to the northeast part of the city and destroyed it.

The undisputed facts further show that neither of the parties who were in the automobile had received any money from appellant, or that they were authorized by him to take his car or buy the whisky. If it could be said that the driver of appellant's car was appellant's agent, and that his agent's possession of the

whisky must be regarded as in his possession, then there is an entire failure of proof of intention to sell, barter, exchange, give away, or otherwise dispose of the same, except the presumption which goes with a quantity possession. Acts 1917 p. 15, §35, *supra.* However, in this case the quantity is not shown. Whether there was a gallon or more does not appear.

In *Banks* v. *State* (1919), 188 Ind. 353, 123 N. E. 691, this court, in considering a charged violation of Acts 1917 p. 15, §4, *supra,* said: "The statute under consideration does not make it unlawful for a person to have intoxicating liquor in his possession in this state for his own use, and it expressly provides that it does not prohibit a person having liquor in his possession from giving it to a guest in his own home; but it was apparently the intention of the legislature to make it impossible for a person to obtain possession of liquor in this state. * * * Once a person has obtained possession and control of liquor, the statute does not make it unlawful to use it, but it does make it unlawful to furnish it to others except as specifically provided in the act."

The undisputed evidence of appellant and other witnesses completely overcomes the statutory presumption to which we have referred, even if by any pretext from the evidence a quantity presumption could be said to exist. After a careful consideration of all the evidence disclosed by the record before us, we conclude that the decision of the court is without evidence to support it, and for that reason, contrary to law.

The judgment is therefore reversed, with instructions to the trial court to sustain appellant's motion for a new trial and for further proceedings not inconsistent with this opinion.